UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Broward County Division)

| | |
|---|---|
| JAMES A. GRAHAM, | ) |
| | ) |
| Plaintiff, | ) CASE NO: 0:13-CV-60491 |
| | ) |
| v. | ) |
| | ) |
| ASSOCIATED AIRCRAFT | ) |
| MANUFACTURING & SALES, INC. | ) |
| Defendant. | ) |

## COMPLAINT

The Plaintiff, JAMES A. GRAHAM (hereinafter "Plaintiff" or "GRAHAM") brings this Complaint against the Defendant, ASSOCIATED AIRCRAFT MANUFACTURING & SALES, INC. (hereinafter "AAMS") and states and alleges as follows:

### JURISDICTION AND VENUE

1. This Court has original jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343 and has supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367.

2. Venue is proper under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3). This claim arose in all material respects within the State of Florida and County of Broward and all acts complained of therein occurred within Broward County, Florida and within the Southern District of Florida. The employment records relevant to such unlawful practices complained of are maintained and administered in the Southern District of Florida.

3. This civil action arises under the Constitution and Laws of the United States. Plaintiff is alleging a violation of his rights under the Americans with Disabilities Act

(hereinafter "ADA"), 42 U.S.C. § 12101, et. seq., the Age Discrimination in Employment Act, 29 U.S.C. § 621 et. seq. (hereinafter "ADEA"), the Civil Rights Act, 42 U.S.C. § 1981a and 42 U.S.C. § 1991, and the Florida Civil Rights Act, Florida Statutes § 760.

## PARTIES

4. Plaintiff, JAMES A. GRAHAM, hereinafter referred to as Plaintiff or "GRAHAM", is a Broward County, Florida resident, whose date of birth is September 9, 1941, and who was employed by Defendant AAMS until his termination on February 25, 2010 at the age of 68.

5. At all times material herein, ASSOCIATED AIRCRAFT MANUFACTURING & SALES, INC., (hereinafter "Defendant" or "AAMS", is a Foreign Corporation with its principal business in Broward County, Florida at 2735 N.W. 62nd Court, Ft. Lauderdale, FL 33309.

6. Defendant AAMS is an employer within the meaning of the ADA and the ADEA as it employed more than 50 workers at all times relevant and is engaged in interstate commerce.

## PROCEDURAL REQUIREMENTS

7. Plaintiff filed a timely charge of discrimination that satisfied the requirements of the Florida Commission on Human Relations ("FCHR") and the Equal Employment Opportunity Commission ("EEOC") which have a work sharing agreement. Such charge alleged unlawful discrimination based on age and disability. A copy of the Charge of Discrimination is attached hereto as Exhibit "A" and the statements contained therein are incorporated herein by reference.

2

8. On or about December 6, 2012, the EEOC issued a Dismissal and Notice of Right to Sue, stating that Plaintiff, JAMES A. GRAHAM, could file a civil action under Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act, and the Age Discrimination in Employment Act within ninety (90) days from the receipt of such Notice. Plaintiff, JAMES A. GRAHAM, received a copy of such Notice on or about December 8, 2012. Plaintiff filed this Complaint within ninety (90) days after the date on which he received such Notice of Right to Sue. Attached as Exhibit "B" is a copy of he Notice.

9. All conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTUAL ALLEGATIONS

10. Defendant AAMS is a manufacturer and distributor of parts for use in the aviation industry, including parts for the US Defense Industry.

11. In 1993 Defendant AAMS had a faltering Quality Assurance System that was in Method-C with the Federal Government and Defendant AAMS was close to loosing its ability to operate and especially to obtain government contracts unless immediate improvements were made by Defendant AAMS.

12. In 1993 Plaintiff was hired to correct the Quality Assurance problems and establish a level of credibility with the US Governments Quality Assurance Representatives who would be overseeing the quality of production at Defendant AAMS.

13. At the time that the Plaintiff was hired he was an established Quality Assurance Consultant in the aviation industry.

14. As a condition of his employment, it was agreed that the Plaintiff could continue

with his outside employment as a Quality Assurance Consultant with other companies. In fact, Defendant AAMS wanted him to continue with this consulting activities to develop Quality Assurance Systems with the vendors and suppliers of Defendant AAMS, as this benefitted Defendant AAMS in its procurement of US Government contracts, in dealing with larger government contractor, and in dealing with large manufactures of commercial aircraft.

15. In a relatively short time Plaintiff put systems in place to correct the Quality Assurance problems and he established a level credibility with the on site US Government Quality Assurance Representatives so that Defendant AAMS became a model in the industry.

16. Throughout the course of Plaintiffs employment, and with the full knowledge and approval of Defendant AAMS, the Plaintiff continued with his outside consulting business.

17. From 1993 to 2009 Plaintiff was the head of the Quality Assurance Department at the Defendant's facility and had an exemplary reputation as a Quality Assurance Manager with the US Government Defense Contract Management Agency and foreign government agencies from which numerous quality awards were presented to AAMS.

18. From 2009 to the date of termination his job changed so that he was in charge of only Quality Assurance procedures. The Quality Assurance for the manufacturing facility was turned over to Valerie Valentovic and Plaintiff no longer had responsibility for or access to the manufacturing operation.

19. Defendant AAMS maintains a written employee manual and disciplinary policy such that unacceptable conduct by an employee is to be reviewed with the employee, signed to acknowledge its receipt by the employee and it would be placed in the employee's personnel file.

20. During the course of Plaintiff's employment he was not disciplined or given any

written warning that would have put him on notice of unacceptable job performance that would subject him to termination or any adverse employment action.

21. From the time that the Plaintiff began his employment with Defendant AAMS, Peter Beaulieu, a V.P. and Frank Seguin, the President, have known that Plaintiff was diagnosed with narcolepsy and sleep apnea, which are disabilities within the meaning of the ADA, and that he was under a doctor's care. They agreed to accommodate his disabilities.

22. Plaintiff's job description was primarily administrative with his own office so his occasional falling asleep in his office because of the narcolepsy was accepted.

23. Up until the time of the Plaintiff's termination, this disability was apparently not an issue with management as it did not affect Plaintiff's ability to do his job from 1993 until just before his termination on February 25, 2010 when it was presented as a reason that he should retire or be terminated.

24. On or about February 25, 2010 Defendant AAMS perceived Plaintiff's episodes of narcolepsy as a disability that would prevent the Plaintiff who was now over 68 years old from continuing with his job a Quality Assurance Manager.

25. The company provides health insurance to employees as an employee benefit and Plaintiff was a participant.

26. In early 2009 Plaintiff was hospitalized for cardiac related medical problems from which he recovered and returned to work in March, 2009.

27. On April 16, 2009 Plaintiff fell in the employee parking lot at work and fractured his pelvis and injured his low back and was hospitalized. He returned to work on limited duty to prepare the company for an audit to maintain a necessary AS 9100 certification.

28. Because of the increasing cost of employer provided health insurance, before the expiration of the existing employee health insurance policy at the end of February 2010, Defendant AAMS regularly investigated for ways to lower cost health insurance.

29. Because of Plaintiff's age and medical condition, his continued employment with Defendant AAMS, significantly increased the cost of the employee health insurance plan for the March 2010 to February 2011 policy period.

30. Peter Beaulieu is one of the owners of Defendant AAMS. He, as well as other owners, personally benefits, financially from any savings on the cost of the employee health insurance plan and they would directly benefit if Plaintiff was removed from the payroll.

31. The employee health plan of Defendant AAMS is governed by ERISA and Defendant was required to provide the health insurance plan to all employees, including Plaintiff, so as long as the Plaintiff remained in the employ of Defendant AAMS it must provide him with the same health insurance plan as it provides to other, younger and healthier employees.

32. Plaintiff was made aware by the management of Defendant AAMS of the negative effect of his continued employment on the cost of the employee health care plan prior to his termination.

33. Approximately one week before February 25, 2010, Peter Beaulieu, the Vice-president of Defendant AAMS questioned Plaintiff regarding his intentions regarding continued employment at which time Plaintiff advised that he had no interest in retiring and intended to work until he was 75 years old.

34. On February 25, 2010, Frank Lannon, the CEO, advised Plaintiff that he, and owners Peter Beaulieu and Frank Seguin were concerned about Plaintiff's health and presented

the Plaintiff with a detailed and previously prepared Separation and Consulting Agreement. Fran Lannon stated that it was a way that Plaintiff could cut back, get paid and retire by signing the Agreement. A copy of the Agreement that was presented to the Plaintiff is attached as Exhibit "C" and is incorporated herein by reference. He was required to sign it at that time as it had been signed by Frank Lannon.

35. In the above Agreement, Plaintiff would not be an employee but would be an independent contractor who would not be entitled to employee benefits, including heath insurance and worker's compensation insurance (Exhibit "C" @ paragraph 3 (c)), but would remain as a paid consultant for 2 years (Exhibit "C" @ paragraph 2). Plaintiff would also have to release all employment claims including Title VII claims, ADA claims, ADEA claims, and any other employment discrimination claims. (Exhibit "C" @ paragraph 4 (a))

36. The Plaintiff did not want to retire and would not sign the agreement and was advised that he was terminated as of that date.

37. Plaintiff is a "qualified individual with a disability" which is defined under the ADA as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8)

38. At the time of the Plaintiff's termination he had the disability of narcolepsy and physical disabilities caused by an on the job pelvic and back injury that were permanent in nature and which, individually and collectively, meet the definition of a disability under the ADA but which did not keep the Plaintiff from performing the essential functions of his position as a Quality Assurance Manager with Defendant AAMS.

39. At the time of Plaintiff's termination, the management of Defendant AAMS were aware of Plaintiff's medical history and physical limitations including his cardiac related problem, from 2009.

40. On information and belief, Frank Lannon, Peter Beaulieu, and Frank Seguin, who were all officers of Defendant AAMS, and two of whom are owners, perceived that the Plaintiff was disabled and unable to perform as a Quality Assurance manager because of the Plaintiff's advanced age, his history of narcolepsy, the 2009 pelvic fracture and back injury, his 2009 cardiac hospitalization and other medical issues.

41. On information and belief, Frank Lannon, Peter Beaulieu, and Frank Seguin, who were all officers of Defendant AAMS, and two of whom are owners, knew that the Plaintiff's advanced age (68 years old), and his disability or perceived disability would cause health insurance premiums to increase if he were to remain as an employee.

42. On information and belief, Frank Lannon, Peter Beaulieu, and Frank Seguin, who were all officers of Defendant AAMS, and two of whom are owners, intentionally decided to terminate the Plaintiff on February 25, 2010 as they determined that they did not want the Plaintiff, a 68 year old employee with his documented disability or perceived disability, to remain in the employ of Defendant AAMS after March 1, 2010, because it would cause health insurance premiums to increase to their collective detriment.

43. When the Plaintiff was terminated on February 25, 2010 because he would not sign the Separation and Consulting Agreement that contained among its provisions the release all employment discrimination claims against Defendant AAMS; no one at Defendant AAMS advised Plaintiff of any non-discriminatory reason that he was being terminated.

44. Defendant AAMS acted with malice and with reckless disregard of the Plaintiff's rights under the ADA, the ADEA and under the Florida Civil Rights Act.

## CLAIMS FOR RELIEF

## COUNT I
## DISCRIMINATION BASED ON DISABILITY UNDER THE ADA

Plaintiff adopts and incorporates by reference paragraphs 1-44 above as if fully set forth herein.

45. The Plaintiff has physical impairments that substantially limits one or more of his major life activities.

46. Plaintiff has a record of such impairments as Defendant AAMS has known about the narcolepsy since Plaintiff was hired in 1993 and was aware of his fall in the employee parking lot in 2009 where he was out of work for a significant period of time and returned with physical limitations.

47. Plaintiff's medical doctors and the owners of Defendant AAMS regarded the Plaintiff as having such impairments.

48. the owners of Defendant AAMS perceived the Plaintiff as having such impairments.

49. Plaintiff is disabled within the meaning of the ADA or Defendant AAMS perceives him as being disabled because of Plaintiff's age and medical conditions.

50. Plaintiff is qualified to perform the job of a Quality Assurance manager, with or without reasonable accommodation.

51. Plaintiff was discriminated against by Defendant AAMS because of his disability

when it forced him to either retire under the Separation and Consulting Agreement or be terminated because Defendant AAMS did not want a 68 year old person with a disability or with a perceived disability as an employee with the commensurate high cost of his employee benefits.

52. Plaintiff was deprived of his rights under 42 U.S.C. Section 1981 and was denied equal protection under the laws by the Defendant AAMS.

53. As a direct, natural, foreseeable and proximate result of such actions, Plaintiff has suffered injuries and losses including a violation of his statutory rights, pain and suffering and extreme emotional distress, loss of ability to lead a normal life, all of which injuries and losses are continuing and permanent in nature.

## COUNT II
## DISCRIMINATION BASED ON DISABILITY UNDER THE ADEA

Plaintiff adopts and incorporates by reference paragraphs 1-44 above as if fully set forth herein.

54. Peter Beaulieu, an officer and owner of Defendant AAMS questioned Plaintiff one week before he was presented with the Separation and Consulting Agreement, about his age and his intention regarding retirement.

55. At the time of this meeting the Plaintiff was a salaried employee with employee benefits that were provided to all of Defendant AAMS's employees, including group health insurance.

56. Age is not a bona fide occupational qualifications reasonably necessary to the normal operation of Defendant's business and in particular it is not a bona fide occupational

qualification for the job of a Quality Assurance Manager or employee.

57.　At the time of the Plaintiff's termination on February 25, 2010 Defendant AAMS placed no physical restrictions on the job that Plaintiff had held since 1993 that would prevent him from performing as a Quality Assurance Manager on February 25, 2010.

58.　Defendant AAMS terminated the Plaintiff on February 25, 2010 in whole or in part because of his age, and because Plaintiff was not going to retire for a number of years.

59.　Defendant AAMS no longer wanted to have the Plaintiff at his advanced age, which was 3 years past the expected retirement age of 65, to continue as an employee with a history of medical problems that would affect the cost of employee benefits including health care costs of the employee group health insurance plan that is subject to ERISA.

60.　The Plaintiff's unwillingness to retire caused Defendant AAMS to have a 7 page, detailed and legally binding document; i.e., the Separation and Consulting Agreement (Exhibit "C") prepared in advance (probably by legal counsel) in order to present to the Plaintiff without prior notice in order to force him to sign it and retire.

61.　Then just 2 to 3 days after Defendant AAMS was recertified under AS 9100 with Plaintiff's expert assistance he was advised by Defendant AAMS that he needs to retire and he was presented with the Separation and Consulting Agreement and advised to sign it and retire.

62.　At the time of the Plaintiff's termination there was no written warning or other notice that was shown to the Plaintiff, discussed, signed and then placed in his personnel file as is set forth in Defendant's employee manual.

63.　Defendant AAMS bears the burden of proving that this action by Defendant AAMS that hurts an older workers, such as the Plaintiff, was based not on age but on some other

11

reasonable factor.

64. Plaintiff was deprived of his rights under 42 U.S.C. Section 1981 and was denied equal protection under the laws by the Defendant AAMS.

65. As a direct, natural, foreseeable and proximate result of such actions, Plaintiff has suffered injuries and losses including a violation of his statutory rights, pain and suffering and extreme emotional distress, loss of ability to lead a normal life, all of which injuries and losses are continuing and permanent in nature.

## COUNT III
## AGE AND DISABILITY DISCRIMINATION UNDER
## THE FLORIDA CIVIL RIGHTS ACT

Plaintiff re-adopts and re-alleges paragraphs 1-65 above as in fully set forth herein.

66. This Court has pendent jurisdiction under 28 U.S.C. §1367 to hear and decide this Florida Statutory cause of action for discrimination as they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

67. Plaintiff is an individual that is entitled to protection under the Florida Civil Rights Act of 1992 ("FCRA").

68. "The general purposes of the Florida Civil Rights Act of 1992 are to secure for all individuals within the state freedom from discrimination because of race, color, religion, sex, national origin, age, handicap, or marital status and thereby to protect their interest in personal dignity, . . . " Florida Statute § 760.01 et. seq.

69. Florida Statute § 760.10 provides that: "It is an unlawful employment practice for an employer:   (a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status.

70. Plaintiff is an employee who is over the age of 40 who also has a disability within the meaning of the FCRA.

71. Plaintiff was employed by Defendant AAMS, who perceived him as having an impairment within the meaning of the FCRA.

72. Defendant AAMS also knew that the Plaintiff was 68 years old at the time that he was terminated as an employee on February 25, 2010.

73. A violation of the ADA and the ADEA is also a violation of the FCRA.

74. By the conduct of Defendant AAMS as described in the General Allegations, Count I and Count II above, Defendant AAMS has engages in unlawful employment practices and discriminated against the Plaintiff on account of his age and disability or perceived disability in violation of FCRA.

75. Defendant AAMS as a Florida employer is liable for damages to the Plaintiff resulting from its violation of the FCRA.

76. Plaintiff has suffered damages as a direct and proximate cause of the Defendant's unlawful conduct.

### DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable as a right by a jury.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, JAMES A. GRAHAM, requests that this Court:

A. Award Plaintiff damages including, but not limited to damages for lost wages and benefits, compensatory damages for pain and suffering, loss of ability to lead a normal life, loss of his job and its amenities, reinstatement and reasonable front pay, back pay, liquidated damages, prejudgment interest, and any other relief authorized by laws;

B. Award Plaintiff the costs of this action and a reasonable attorney's fee on the ADA claim pursuant to 42 U.S.C. Section 2000e-5(k); pursuant to 42 U.S.C. §1220 and pursuant to Section 42 U.S.C. Section 1988;

C. Award Plaintiff the costs of this action and a reasonable attorney's fee on the ADEA claim pursuant to 29 U.S.C. § 626(b) and Section 216(b) of the Fair Labor Standards Act.

D. Award Plaintiff the costs of this action and a reasonable attorney's fee on the FCRA claims pursuant to FS § 760.021.

E. Award punitive damages for the intentional violation of the ADA and the ADEA.

F. Grant Plaintiff any other relief deemed just and proper.

Dated this 1st day of March 2013.

S/ *Robert E. O'Connell*
ROBERT E. O'CONNELL, ESQ.
Florida Bar No.: 315842
ROBERT E. O'CONNELL, P.A.
Email Address: reo@reo-law.com
1499 W. Palmetto Park Road, Suite 416
Boca Raton, Florida 33486
Telephone: 561-999-3250
